Milton TEAGUE, Sr., Appellant,

v.

CHARTER OAK FIRE INSURANCE
COMPANY, Appellee.

No. 12512.

Court of Civil Appeals of Texas,
Austin.

March 23, 1977.

Rehearing Denied April 13, 1977.

Pat Mullen, Colbert & Mullen, Austin, for appellant.

Richard T. McCarroll, Scott R. Kidd, Brown, Maroney, Rose, Baker & Barber, Austin, for appellee.

SHANNON, Justice.

This is a workmen's compensation appeal. Milton Teague, Sr., is appellant, and the Charter Oak Fire Insurance Company is appellee. Teague claimed compensation for repetitious traumatic injury to his back during the sixteen years he worked for Southern Union Gas Company.

The trial was to a jury. The jury failed to find that Teague sustained an injury, and the district court of Travis County entered a take-nothing judgment.

Teague's single point of error concerns the definition of "injury" submitted by the district court. That definition follows:

"'Injury' means damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and such diseases or infection as naturally result therefrom, or the incitement, acceleration, or aggravation of any disease, infirmity, or condition, previously or subsequently existing, by reason of such damage or harm.

"'Injury' does not include ordinary condition of life to which the general public is exposed outside of the employment except where such conditions follow as an incident to an injury as defined herein."

Teague claims that the definition served to exclude from the jury's consideration the incitement, acceleration, or aggravation of an ordinary condition of life.

Teague pleaded that on about April 14, 1975, he became disabled. Before that date he had experienced pain in his back but he was able to continue to work. After consultation with physicians Teague learned that he suffered from a "chronic lumbrosacral strain superimposed on degenerative disc disease." None of the physicians advised Teague to continue working as a laborer.

Teague alleged further that for sixteen years his work for Southern Union Gas Company consisted of heavy lifting, digging, and operating an air hammer. Such tasks constituted "repetitious, physical, traumatic activities" and such activities were the producing cause of his back condition. Teague averred also that he suffered an injury as defined in Tex.Rev.Civ.Stat. Ann. art. 8306 § 20 (1971).

The proof was that Teague suffered from a chronic back strain superimposed on advanced degenerative disc disease of the lower lumbar spine. Teague called Dr. Roy Leamon, an orthopedic surgeon. Dr. Leamon testified, not surprisingly, that degenerative disc disease is not a rare condition. Degenerative disc disease concerns the wearing process of the body, and is a condition that all persons commonly experience at one time or another. Some persons experience degenerative disc disease sooner than others. Some persons have the disc condition but do not suffer pain although other persons experience pain.

In response to a hypothetical question Dr. Leamon affirmed that the class of work in which Teague had been engaged would tend to cause trauma to Teague's back. Although Dr. Leamon was of the opinion that Teague's work would likely cause him pain and symptoms in his back, Dr. Leamon did not testify that the work would be likely to incite, aggravate, or accelerate the degenerative disc disease.

In response to cross-examination, Dr. Leamon explained that degenerative disc disease is a part of the aging process and that there is not necessarily any relationship with the class of work which a person does and the fact that he may or may not have degenerative disc disease. Teague could have had degenerative disc disease regardless of the nature of his work. Dr. Leamon responded further that degenerative disc disease is an ordinary disease or condition of life to which all persons are exposed regardless of the type of work they do, or whether they work at all. Dr. Leamon could not testify that based upon medical probability, Teague's work was the cause of his degenerative disc condition.

Teague's appellate attack is centered upon the second paragraph of the court's definition of "injury." That paragraph instructs the jury that ordinary conditions of life are not "injuries" unless such conditions follow as an incident to an injury.

We have been unable to find any authority in point. Nevertheless, an examination of Tex.Rev.Civ.Stat.Ann. art. 8306 § 20 (1971) convinces us that the district court did not err in defining "injury." The court's definition is premised upon § 20 which provides:

"Sec. 20. Wherever the terms 'Injury' or 'Personal Injury' are used in the Workmen's Compensation Laws of this State, such terms shall be construed to mean damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom. The terms 'Injury' and 'Personal Injury' shall also be construed to mean and include 'Occupational Diseases,' as hereinafter defined. Whenever the term 'Occupational Disease' is used in the Workmen's Compensation Laws of this State, such term shall be construed to mean any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body and such other diseases or infections as naturally result therefrom. An 'Occupational Disease' shall also include damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment; provided, that the date of the cumulative injury shall be the date disability was caused thereby. *Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where such diseases follow as an incident to an 'Occupational Disease' or 'Injury' as defined in this section.*" (Emphasis added)

By the terms of the statute an "injury" resulting from repetitious physical traumatic activity is an occupational disease. The statute provides further that ordinary diseases of life are not compensable except where such diseases follow as an incident to an occupational disease or injury as defined therein. A comparison of the second paragraph of the court's definition of "injury" and the terms of the statute demonstrates that the court in its definition followed nearly verbatim the language of the statute.

Teague argues that the second paragraph of the definition of "injury" precludes the jury from considering the incitement, acceleration, or aggravation of an ordinary condition of life. Appellee's response is that by the terms of § 20, ordinary diseases or conditions of life to which the general public is exposed outside of employment are not compensable and are not "injuries" except where such conditions follow as an incident to an "injury" as defined in the statute. In its first paragraph of the definition, the court defined "injury" to mean " . . . damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time . . . or the incitement, acceleration, or aggravation of any disease, infirmity, or condition, previously or subsequently existing by reason of such damage or harm." The jury was permitted to find as an injury the incitement, acceleration, or aggravation of a previously existing ordinary condition of life so long as Teague could show that such incitement, acceleration, or aggravation resulted from repetitious physical traumatic activity. The jury was not instructed that an ordinary condition of life, though aggravated by work activity, was not an injury. To the contrary, the jury was instructed that ordinary conditions of life are not injuries, *unless* damage or harm to the physical structure of the body results from the incitement, acceleration, or aggravation of that previously existing condition. We are in agreement with appellee's response, and, accordingly, we overrule appellant's point of error.

The judgment is affirmed.

Affirmed.