The CITY OF BRIDGEPORT, Appellant,

v.

Ira BARNES, Appellee.

No. 18189.

Court of Civil Appeals of Texas, Fort Worth.

Nov. 29, 1979.

Rehearing Denied Jan. 3, 1980.

Brown, Herman, Scott, Dean & Miles, and Grant Liser, Fort Worth, for appellant.

Michael L. Fostel, Kermit, Woodruff, Fostel, Wren & Simpson, and Michael A. Simpson, Decatur, for appellee.

## OPINION

SPURLOCK, Justice.

This is an appeal in a worker's compensation case from a jury verdict finding a worker totally and permanently disabled. The main question for determination is whether there is sufficient evidence in the record to support the jury's finding that the stroke injury suffered by the worker resulted from an occupational disease, to-wit: "[R]epetitious physical traumatic activities extending over a period of time and arising in the course of employment; . . . ." Tex.Rev.Civ.Stat.Ann. art. 8306 § 20 (Supp. 1978–79).

We affirm as modified.

Ira Barnes was a water and sewage superintendent for the City of Bridgeport. He suffered a stroke on September 1, 1977 shortly after strenuous physical exertion in repacking a city water pump in the course of his employment. The parties agree that Barnes is totally and permanently disabled as the stroke paralyzed one side of his body and has left him unable to speak or write. Barnes made, through his wife, a claim for compensation alleging that the stroke re-sulted from overexertion in repacking the pump.

After the Industrial Accident Board denied his claim Barnes filed suit alleging his stroke resulted from his overexertion in repacking the pump or alternatively from repetitious physical traumatic activity extending over a period of months before his stroke. The trial court defined injury in its jury charge as follows:

" 'INJURY' means damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and such diseases or infection as naturally result therefrom, or the incitement, acceleration, or aggravation of any disease, infirmity, or condition, previously or subsequently existing, by reason of such damage or harm."

The jury found that Barnes sustained an injury on September 1, 1977 while in the course of his employment. The jury also found that this injury totally and permanently incapacitated him. The City admits that Barnes is totally and permanently incapacitated. The trial court rendered judgment that Barnes recover for total and permanent incapacity and for $26,565.20 in medical and nursing expenses.

The City assigns six points of error. In five of its points it claims that there is no evidence in the record of any repetitious physical traumatic activity extending over a period of time and arising in the course of employment. It concludes that the trial court erred in instructing the jury in its charge that injury means harm or damage resulting from such repetitious physical traumatic activity and that the jury's finding of injury is unsupported by any evidence. It also contends that the injury finding is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

As the City recognized in its brief, in deciding a no evidence question a reviewing court considers only the evidence and infer-

ences supporting the jury's verdict and disregards all contrary evidence. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). A thorough review of the record in this case reveals evidence that some months before Barnes's stroke the City was experiencing problems with its water system. The City was understaffed and under pressure to alleviate the problems. The situation required Barnes to work even longer hours than his usual seven day work week required. There is also evidence that Barnes's work schedule was tiring him and was stressful. He complained several times to the city council that he was working too many hours and needed to be relieved. In addition to the evidence of overexertion in repacking the pump shortly before his stroke, there was also evidence that Barnes had worked late at night repairing broken water lines several times before his stroke.

In deciding whether the evidence above supports the jury's finding of injury resulting from an occupational disease we are guided by two cases. In *Employers Commercial Union Ins. Co. v. Schmidt,* 509 S.W.2d 398 (Tex.Civ.App.—Eastland 1974, writ ref'd n. r. e., 516 S.W.2d 117), the trial court's judgment awarded compensation to a worker who developed chronic myositis or trapezius syndrome from manipulating small watch components with her hands and writs while sitting in a stooped posture with her shoulders and upper arms in a fixed position. In *Standard Fire Ins. Co. v. Ratcliff,* 537 S.W.2d 355 (Tex.Civ.App.—Waco 1976, no writ), compensation was awarded a worker for the temporary total loss of use of her right leg resulting from aggravation of a pre-existing injury to her right knee. The worker operated a sewing machine which required her to use her right leg to push a lever. This activity caused her knee to become swollen and inflamed.

■ From a thorough review of these cases and the Supreme Court's opinion in *Transportation Insurance Company v. Maksyn,* 580 S.W.2d 334 (Tex.1979), it is our opinion that Barnes is required to show more than that his work merely tired him. He must show continuing overexertion and exhaustion of sufficient magnitude to be injurious. We decide that the evidence as outlined above is sufficient to support the jury's verdict. It is evidence from which the jury could properly infer that Barnes's stroke was caused by repetitious physical traumatic activity. Further, when considered in light of all the other evidence in this case we do not find that the jury's verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Although there was some contrary evidence it was certainly within the jury's province to have reached this verdict. We overrule the no evidence, insufficient evidence points and point of error concerning the court submitting a definition of injury in terms of occupational disease. We overrule points of error nos. 1, 2, 3, 5 and 6.

■ By its fourth point of error the City complains that the trial court erred in allowing Barnes to recover for medical, hospital and drug charges because there is no evidence of the amount of these expenses. Barnes was treated in a Veterans Administration Hospital. The City claims the Veterans Administration expenses are no evidence because the Veterans Administration rather than Barnes is the proper party to sue for the expenses. It contends that because the Industrial Accident Board in its findings and orders denied the claim of the Veterans Administration as an independent claimant, the Veterans Administration was a necessary party to an appeal. Thus the City concludes the trial court never acquired jurisdiction over the claim for expenses incurred with the Veterans Administration. We do not agree.

The City cites *Latham v. Security Insurance Co. of Hartford,* 491 S.W.2d 100 (Tex. 1972), as authority for its contention that unless an independent claimant files its own appeal, the award of the Industrial Accident Board is final as to it. In *Latham* a compensation claimant received an award

from the Industrial Accident Board jointly and severally against two compensation carriers. Only one of the carriers appealed the award. The claimant then instituted suit against the non-appealing carrier to enforce the Board's award and the trial court rendered judgment against the carrier based on the award. On appeal of this judgment the carrier argued that the appeal of the Board's award by the other carrier vacated the Board's award as to all parties thereto, including those not named in the suit to set aside the award. The Supreme Court affirmed the judgment of the trial court enforcing the award holding that the suit to set aside the award vacated it only as to the parties to the suit to set it aside.

On its face the *Latham* decision seems to support the City's contention. However, we have given the *Latham* opinion exhaustive study. We find that the court's opinion on motion for rehearing of the case instructive and applicable to this case. The court's opinion on the motion is as follows:

### "ON MOTION FOR REHEARING

"Respondent says that the rule announced in this case entitles all persons, including the injured claimant's own attorney, named in the Industrial Accident Board award, to stand on the award and to collect same unless named and served as parties in a lawsuit to set aside the award. This is not our holding.

"The holding applies only to the insurance carriers and to those parties who are entitled to bring their own direct action against the carrier to enforce or to set aside the Board's award. *Ordinarily this will include only the injured employee, or those persons entitled to death benefits, and the carrier.* The inclusion of other names in the award usually does no more than provide a *detail of payment* by the insurer for the benefit of the principal compensation claimant. Medical expenses may be recovered in a direct ac-

tion by the physician or *others, but these expenses too are usually part of the injured employee's claim.* See *Texas Casualty Insurance Co. v. Beasley*, 391 S.W.2d 33, 40 (Tex.1965); *Maryland Casualty Co. v. Hendrick Memorial Hospital*, 141 Tex. 23, 40 169 S.W.2d 969 (1943). Because of the different possibilities of an award for medical expenses, and because of the broad jurisdiction of the Board once any claim is filed, it would be desirable for the Board to designate in the award those persons who are independent claimants, and to designate separately any persons named to receive payment out of the benefits awarded to the injured employee and whose rights and standing are derivative to those of the employee. The person whose standing is derivative to that of the employee would not be entitled to enforce the award, and he need not be made a party in a suit to set aside the award.

"The motion for rehearing is overruled." (Emphasis added.)

It is our opinion that the above language provides an exception to the general rule where, as here, medical expenses are involved. The Supreme Court's opinion recognizes that even though physicians and others can recover medical expenses in a direct action, these expenses are usually a part of the injured worker's claim. Thus we decide that under the facts of this case it is not necessary for the Veterans Administration to perfect an appeal because its expenses are part of Barnes's claim.

Another reason for our decision is the fact that there is no evidence in the record that the Veterans Administration actually filed a claim with the Industrial Accident Board, or was a party to the proceedings before the Board. The entire file of the Board is in the record. It is true that in denying Barnes's claim the Board states that the bill of the Veterans Administration Hospital, independent claimant, is denied. However, there is no evidence that such a claim was filed. We decide that inclusion

of the denial of the Veterans Administration's bill is a detail of payment rather than a truly independent claim.

Yet a third reason for our decision on this point is the fact there is evidence in the record that Barnes assigned this part of his claim to the Veterans Administration should the board make an award in his favor. In *Texas Employers' Ins. Ass'n v. U. S.*, 569 F.2d 874 (5th Cir. 1978), the United States through its Veterans Administration is allowed to recover by assignment from an injured worker the cost of medical services provided by it even though Tex.Rev.Civ. Stat.Ann. art. 8306 § 3 (1967), prohibits assignment of compensation benefits. The Veterans Administration's assignment regulation, 38 C.F.R. § 17.48(d) (1979) was held to carry the same weight as a federal statute, and thus control over state law under the supremacy clause, U.S.Const. art. VI, cl. 2.

We note that upon oral argument Barnes stated that he had no objection to our modifying the judgment so that the City would pay the medical expenses directly to the Veterans Administration should we affirm the trial court's judgment. Thus for the reasons stated above we conclude the trial court did acquire jurisdiction over the issue of medical expenses.

■ The City also contends in point of error no. 4 that there is no evidence in the record of medical expenses because all the evidence concerning them was hearsay and thus cannot be considered on appeal with or without objection thereto in the trial court. The record reveals that both the attending physician and the custodian of the records for the Veterans Administration testified concerning these expenses incurred.

Dr. Walker, Chief of Neurology Services and supervisor in the neurological department of the V.A. Hospital where Barnes was treated was called out of order and testified before Braun, the medical records administrator at the V.A. Hospital testified. Dr. Walker testified he was in charge of

Barnes's treatment; that the charges made by the V.A. Hospital as outlined in Exhibit 11, which is the itemized bill of the V.A. Hospital of Barnes's treatment, were made for the care of Barnes; that these charges were the usual and customary charges, reasonable in amount for the care and services rendered to Barnes necessary for his treatment. His testimony corresponds with the bill rendered Barnes by the V.A. Hospital and being Exhibit 11. Objection was later made after the doctor had testified but no motion to strike the answer of the doctor was made and therefore his answer can be considered by this court. An objection was made that he was testifying from the bill of the hospital which had not been admitted in evidence and it was simply a compilation. No objection was made that Exhibit 11 was not the best evidence. It is apparent that the doctor was refreshing his memory from the official bill of the V.A. Hospital rendered to Barnes.

Mr. Braun, medical records administrator of the V.A. Hospital where Barnes was treated, was later called as a witness. He testified that he is supervisor of the records of that hospital; that Barnes was a patient in the hospital during the period of time reflected in the bill and also had some outpatient treatment thereafter. He further testified as follows:

"Q    All right, sir.   Are these records kept in your normal duties as the record keeper of the hospital?

"A    Yes, sir, they are.

"Q    Do your records reflect also the charges attributable to the services rendered to Mr. Barnes?

"A    Yes, sir, they do.

"Q    Can you tell me how much those charges total to, sir?

"A    The charges were broken down at your request.   They total twelve thousand, six hundred ninety-five dollars and seventy cents.   However, as the broken-down bill exceeds the per diem rate charge according to

the Bureau of the Budget, the total figure of the Veterans Administration they would like to recover is eleven thousand, six hundred fifteen dollars, twenty cents.

"Q  I didn't understand that, I looked at the—a per diem is set by the Federal government at maximum amount?

"A  They assessed a daily, all-inclusive rate. This is ordinarily considered our rate. However, if we are requested to to (sic) break down a bill, which I was able to do, we have a table to do this. If this exceeds by doing this, in other words, the various tests and so forth, if these exceed the normal per diem rate as set, we will take the lower figure.

"Q  Okay. So the lower figure is the eleven six fifteen twenty?

"A  Yes, sir."

On cross examination he testified that when a veteran is hurt they do not ordinarily send him a bill for the hospital treatment. They do send a bill when they have a chance to recover from the veteran if a third party is responsible for the medical treatment. It is apparent that the hospital attempts in those circumstances to comply with the federal law setting the rate they are permitted to charge, therefore, the bill was itemized and resulted in a discount.

The jury found the reasonable charges for medical, hospital and drug services from September 1, 1977, to present was "$12,-695.70 less V.A. discount".

The testimony of the medical records administrator and the treating doctor for Barnes, taken together, was sufficient to prove up the V.A. Hospital bill. Point of error no. 4 is overruled.

■ Although the City did not assign a point of error nor otherwise allege error, its statement of the case in its brief directed the attention of the court to the possibility of a fatal variance between the claim made by Barnes with the Industrial Accident Board, and the claim alleged in his petition appealing the Board's denial of his claim. The City states that Barnes's claim to the Board was for an accidental injury. It further notes that in Barnes's amended petition for the first time he alleges injury from an occupational disease.

We have thoroughly reviewed Barnes's claim filed with the Board. We note that his injury incapacitated him, and that his wife was forced to file the claim. The claim was filed on a form for an occupational disease. Another form was filed by Barnes's attorney on a form for an accidental injury. The same basic information was included on both forms. Because the different forms were used it is thus difficult to characterize whether the claim was for an accidental injury or injury resulting from an occupational disease. The City would have us conclude that the claim was for an accidental injury and apply the general rule that there must be an identity of injury or claim filed with the Board and alleged on appeal in the district court. Thus the City would have us hold that the trial court was without jurisdiction to decide the issue of injury resulting from an occupational disease. We refuse to so hold.

Our decision on this issue is guided by *Consolidated Underwriters v. Wright*, 408 S.W.2d 140 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.). There a claim was filed for an injury resulting from an occupational disease and the award was appealed as an accidental injury. The injury to the worker was lung damage from the inhalation of gas fumes. The court held that there was no fatal variance. In the case at bar we also conclude there was no fatal variance because the same injury was alleged. The injury alleged in the claim to the Board was identical to that pleaded on appeal. Under the facts of this case the characterization of the injury as resulting from an accident or an occupational disease is not controlling. This is not a case where the injury claimed to the Board covers a different part of the body, or occurred at a different time or place from the injury alleged on appeal.

The trial court's judgment awarded Barnes $26,565.20 for nursing and medical services rendered in the past. This portion of the judgment is modified as follows: Out of the sum Barnes was awarded for nursing and medical services, and to be deducted therefrom, the City is ordered to pay the Veterans Administration $11,615.20.

We have severally considered each point of error presented in complaint of the trial court's judgment. Each is overruled.

The judgment of the trial court is affirmed as modified.