IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 03-90-271-CV





DIRECTOR, STATE EMPLOYEES WORKERS' COMPENSATION


DIVISION, STATE OF TEXAS,



 APPELLANT


vs.





JESSIE MAE BLAINE,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT



NO. 447,875, HONORABLE JERRY DELLANA, JUDGE 



 




 The Director of the State Employees Workers' Compensation Division (hereafter
"the Director") appeals an adverse judgment in this workers' compensation case involving an
occupational disease. We will affirm the trial court's judgment.

THE CONTROVERSY


 The Austin State School employed Jessie Mae Blaine in its medical unit from 1973
through July 1983 and again from June 1984 until February 1988. The School tested Blaine
annually for tuberculosis. After several negative skin tests, in 1978 Blaine tested positively,
revealing that she had been exposed to tuberculosis. In 1988, Blaine began to exhibit flu-like
symptoms and in February her doctor diagnosed her as suffering from tuberculosis. As a result,
her doctor performed a lobectomy, removing a portion of her left lung.

 On March 11, 1989, Blaine injured her back in a fall she claims resulted from the
effects of isoniazid (INH), a medication prescribed for the treatment of her tuberculosis. Blaine
filed a claim for workers' compensation, alleging that shortness of breath and back problems she
attributes to her fall render her unable to work.

 The Director defended the claim on the theory that Blaine also suffers from non-compensable arthritis, chronic obstructive pulmonary disease (COPD), and Hepatitis B, which
contribute to her incapacity and require a proportionate reduction in benefits. See 1947 Tex. Gen.
Laws, ch. 113, § 4, at 178 (Tex. Rev. Civ. Stat. Ann. art. 8306, § 22, since repealed).

 The jury returned a verdict for Blaine, finding that she sustained an occupational
disease in the course and scope of her employment which was a producing cause of her total and
permanent incapacity, and failing to find contribution due to COPD, arthritis, or Hepatitis B. The
trial court rendered judgment on the verdict.

 The Director appeals, raising eleven points of error. He complains in the first nine
points of the legal and factual sufficiency of the evidence and in the last two points of the manner
in which the case was submitted to the jury. We will address the jury-charge complaints first.

THE JURY CHARGE


 The Director tendered jury questions on contribution proposing to ask the jury:

Did Plaintiff have any C.O.P.D. separate and distinct from her tuberculosis that
aggravated her occupational disease?



Did Plaintiff's C.O.P.D. aggravate, prolong, accelerate, or in any way contribute
to her incapacity from her occupational disease?



(Emphasis added). The Director proposed similar questions regarding arthritis and Hepatitis B. 
Instead, the trial court submitted the questions as follows:


 9. Did Plaintiff have C.O.P.D. separate and distinct from her tuberculosis that 
 aggravated her tuberculosis disease?


10. Did Plaintiff's C.O.P.D. aggravate, prolong, accelerate, or in any way 
 contribute to her incapacity from her tuberculosis?


(Emphasis added). The trial court submitted similar questions numbered twelve, thirteen and
fifteen regarding arthritis and Hepatitis B. The jury answered "no" to all of these questions.

 The Director complains in point of error ten that the trial court erred by using the
words "tuberculosis" and "tuberculosis disease" instead of the words "occupational disease" in
these questions. On this point, the Director failed to preserve error.

 At trial the Director objected to the wording of the contribution questions stating:


Defendants would object to the use of occupational disease in . . . question nine
through sixteen as the term tuberculosis is used in place of occupational disease,
and the fact that I think it would confuse the jury and lead to possibly an erroneous
verdict and judgment.



(Emphasis added.) The Director argues on appeal that the wording constitutes a comment on the
weight of the evidence. This ground was not specifically raised at trial and, as a consequence,
is waived on appeal. See Russell v. Campbell, 725 S.W.2d 739 (Tex. App. 1987, writ ref'd
n.r.e.).

 The Director also argues on appeal that the questions, as worded, confused the jury
and led to an improper verdict. Although this argument may comport with the Director's
objection at trial, the stated ground for the objection is too general. To preserve error, a party
must point out distinctly the error and the legal basis of the objection. See Tex. R. Civ. P. Ann.
274 (Supp. 1992); Wright Way Const. Co., Inc. v. Harlingen Mall Co., 799 S.W.2d 415 (Tex.
App. 1990, writ denied); see also Tex. R. App. P. Ann. 52(a) (Pamph. 1992). An objection must
be specific enough to support the conclusion that the trial court was fully cognizant of the grounds
of complaint and deliberately chose to overrule it. Chrysler Corp. v. Roberson, 619 S.W.2d 451
(Tex. App. 1981, no writ). The Director's ground, that the wording of the question "may confuse
the jury," does not comply with Rule 274 because it does not explain why the question is legally
incorrect or how it would confuse the jury. See Castleberry v. Branscum, 721 S.W.2d 270, 277
(Tex. 1986). We overrule point of error ten.

 In point of error eleven, the Director complains that the trial court abused its
discretion by incorrectly submitting the definition of occupational disease to include "aggravation,
acceleration or incitement of any disease," because article 8306, section 22, expressly reduces
recovery of workers' compensation benefits if: (1) the occupational disease is aggravated by a
non-compensable condition, or (2) incapacity or death from a non-compensable condition is
aggravated, prolonged, accelerated or in anyway contributed to by an occupational disease. See
1947 Tex. Gen. Laws, ch 113, §4, at 178 (Tex. Rev. Civ. Stat. Ann. art. 8306, § 22, since
repealed). 

 We recognize that the courts disagree whether it is erroneous to define occupational
disease as including aggravation, acceleration or incitement of a non-compensable disease or
condition. Compare Mason v. Texas Employers' Ins. Ass'n, 628 S.W.2d 806 (Tex. App. 1981,
writ ref'd n.r.e.), with Leal v. Employers Mut. Liab. Ins. Co., 605 S.W.2d 328 (Tex. Civ. App.
1980, no writ); see U.S. Fidelity & Guar. Co. v. Bearden, 700 S.W.2d 247, 250 (Tex. App.
1985, no writ) (permitting recovery for aggravation of a non-occupational disease where section
22 defenses were waived); Home Ins. Co. v. Davis, 642 S.W.2d 268, 269 (Tex. App. 1982, no
writ) ( stating that aggravation, acceleration, or incitement of a non-occupational disease does not
constitute a compensable injury under our Workers' Compensation Act) (citing Texas Employers'
Ins. Ass'n v. Schaefer, 598 S.W.2d 924, 928-29 (Tex. Civ. App.), aff'd on other grounds, 612
S.W.2d 199 (Tex. 1980)); see also City of Bridgeport v. Barnes, 591 S.W.2d 939, 940 (Tex. Civ.
App. 1979, writ ref'd n.r.e.); Lubbock Indep. Sch. Dist. v. Bradley, 579 S.W.2d 78, 81-82 (Tex.
Civ. App. 1979, writ ref'd n.r.e.); Standard Fire Ins. Co. v. Ratcliff, 537 S.W.2d 355, 359-60
(Tex. Civ. App. 1976, no writ) (all tacitly approving instructions that occupational disease
includes aggravation, acceleration, or incitement of previously or subsequently existing disease,
infirmity, or condition); see generally T.P. Sartwelle, Annual Survey of Texas Law, 32 Sw.L.J.
291, 351-52 (1978). However, this court approved this form of submission in Teague v. Charter
Oak Fire Ins. Co., 548 S.W.2d 957 (Tex. Civ. App. 1977, writ ref'd n.r.e.). Accordingly,
following Teague, we find no error in the court's definition and overrule the Director's eleventh
point of error.




SUFFICIENCY OF THE EVIDENCE


 The Director's first nine points of error complain of the legal and factual
sufficiency of the evidence to support the jury's findings. (1) Points one through six address the
jury's negative answers to defensive questions nine, ten, twelve, thirteen and fifteen. Specifically
the Director complains in these six points that the trial court erred in overruling the motion for
new trial because either the jury's failure to find contribution is against the great weight and
preponderance of the evidence or contribution is proven as a matter of law.

 The standard of review for failure to find on an issue on which the appellant had
the burden of proof is the same as that for an adverse finding on such an issue; the appellant
attacking the legal sufficiency of the evidence must demonstrate that the evidence conclusively
established all vital facts in support of the issue. Sterner v. Marathon Oil Co., 767 S.W.2d 686,
690 (Tex. 1989). The reviewing court will first examine the record for evidence that supports the
finding, while ignoring all evidence to the contrary. Id. If there is no evidence to support the
finding, the reviewing court will then examine the entire record to determine if the contrary
proposition is established as a matter of law. Id.; see also Holley v. Watts, 629 S.W.2d 694, 696
(Tex. 1982). A party challenging the factual sufficiency of the evidence to support a failure to
find on an issue on which he had the burden of proof must demonstrate the failure to find was
against the great weight and preponderance of the evidence. Parrish v. Hunt, 331 S.W.2d 304
(Tex. 1960). In reviewing a factual-sufficiency challenge, this Court must examine all the
evidence in the record to determine if there is some evidence to support the finding; if the finding
is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly
wrong and manifestly unjust; or if the great preponderance of the evidence supports its non-existence. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d
660, 661 (Tex. 1951). The granting or denial of a new trial is within the trial court's discretion
and will not be disturbed on appeal absent an abuse of discretion. Jackson v. Van Winkle, 660
S.W.2d 807, 809 (Tex. 1983).

 After reviewing the statement of facts, we find the evidence does not conclusively
establish that COPD, arthritis, or Hepatitis B aggravated Blaine's tuberculosis or contributed to
her incapacity. Nor is the failure to find aggravation or contribution against the great weight of
the evidence. Both Blaine and her supervisor, Sally Bell, testified that before Blaine contracted
tuberculosis she had no problem performing her work; Blaine testified that before she had no
shortness of breath and no physical problems with her feet or back.

 Blaine also testified that Dr. Lengel diagnosed her tuberculosis and prescribed INH. 
She took INH from February through June of 1988; Dr. Lengel took her off the INH when she
began experiencing numbness in her feet and hands. Blaine testified that the numbness caused her
knees to buckle and, as a result, she frequently fell. One fall in March 1989 injured her lower
back.

 Dr. Lengel, Blaine's treating physician, testified that the numbness and tingling in
Blaine's legs could have been a side effect of the INH. Lengel's progress note of January 5,
1989, stated that Blaine had "[p]eripheral neuropathy, probably isoniazid related." Dr. Michael
Kelly, the Director's expert medical witness, explained that peripheral neuropathy is derangement
of the nerve function; one side effect of INH is that it causes peripheral neuropathy.

 Dr. Jane Berry, who treated Blaine's back injury, diagnosed severe arthritis also. 
Lengel testified that back x-rays showed some degenerative arthritis and that Blaine's treatment
did not cause the arthritis. However, Dr. Kelly testified that simply having degenerative or
osteoarthritis does not necessarily mean a person is going to have symptoms from that arthritis,
but that an injury from a fall could aggravate or cause it to become symptomatic. In that instance,
Kelly said, it would be hard to say whether the symptoms were from the injury, the fall, or the
arthritis.

 Lengel testified that he could not rule out the possibility that the arthritis could
affect the nerves to the leg, causing Blaine's numbness and tingling, or the cause could be a
combination of the arthritis and the INH. In addition, for unrelated reasons, Blaine has previously
had her thyroid removed and she was at one time "low in her thyroid" which Lengel testified can
also potentially cause peripheral neuropathy. 

 In a letter from Dr. Lengel to an insurer dated January 21, 1990, Lengel stated:


Ms. Blaine is disabled by virtue of severe degenerative joint disease in her back. 
Her disability essentially started in January of 1988 when she was admitted with
an unresponsive pneumonia that turned out to be pulmonary tuberculosis. This
tuberculosis was complicated by a lung abscess requiring a left lung lobe resection
with underlying COPD. This left her with more symptoms of emphysema, which
was treated with medication, including bronchodilator and Theo-Dur.

 She subsequently developed a peripheral neuropathy thought in part
due to isoniazid for the pulmonary tuberculosis, but largely because of severe
degenerative arthritis. The back has been very difficult . . . to get to respond to
treatment.



Lengel testified, "[M]y initial concern was that it was possibly a side effect of the isoniazid
medication, yet it was such that that wasn't the only explanation. And I'm not sure to date I still
can tell you which possibility that was doing it. But that probably is a combination of factors." 
Lengel could not say with reasonable medical probability that INH was a contributing factor to
the peripheral neuropathy.

 Dr. Lengel also diagnosed COPD and Hepatitis B. He testified that neither he nor
Dr. Clark, who first examined Blaine, noted a history of COPD or associated wheezing symptoms
after their initial examination of Blaine. However, a breathing test administered June 16, 1988,
after Blaine's lobectomy, showed some evidence of COPD. Blaine's doctors believed she had
some obstructive problems in her lungs before her lobectomy; they presumed she had emphysema
because she smoked cigarettes for thirty-two years before she quit smoking in 1987.

 Neither did Lengel or Clark note a history of Hepatitis B or yellow jaundice after
Blaine's initial examination, and both noted Blaine's liver was not enlarged or tender. All of these
symptoms should have been present if Blaine had hepatitis. Dr. Lengel testified that Blaine's
hepatitis was not secondary to the tuberculosis. To the contrary, Dr. Kelly testified that INH can
cause hepatitis; in fact, he said, INH is more commonly known for this side effect than for
neuropathy.

 Blaine testified at trial that she experiences shortness of breath, pain in her back
and chest, numbness in her feet and left arm, and she tires easily. In addition, Dr. Jane Berry
restricted Blaine to lifting no more than five to ten pounds. Lengel testified that Blaine's shortness
of breath, fatigue and restricted physical activity are the combined effect of the COPD, arthritis,
"the INH factor with her back," Blaine's age and high blood pressure. He could not say which
of these was the primary cause but "it seemed like the most trouble she was having was with her
back." Lengel agreed that COPD as well as the lobectomy must be considered possible causes
of Blaine's incapacity, but there is no way to tell how much COPD contributed to the incapacity;
tests indicate Blaine's lung incapacity is mild when she is on medication. Lengel also testified that
Blaine complained of a tightness in her chest which occurred after the onset of shortness of breath. 
He attributed this tightness to emphysema or COPD. Lengel stated that Blaine's presumed
emphysema would "likely and potentially" make her more short of breath.

 Lengel's opinion, based on reasonable medical probability, is that Blaine's
tuberculosis was the first in a string of events that led to her inability to work, but that very little
of Blaine's incapacity to work was a result of her tuberculosis. He summarized his opinion by
saying that a moderate degree of Blaine's incapacity was arguably caused by the tuberculosis
further compromising her lung function, possibly making it easier for her to get other lung
infections. Arguably, part of her numbness in her feet was due to the treatment for tuberculosis,
but this is inconclusive; the degree of arthritis in her spine contributes to leg symptoms, causing
her fall, which undoubtedly strained or potentially further injured her back.

 Regarding the cause of Blaine's contracting tuberculosis, Lengel testified it is a
theoretical possibility that Hepatitis B could lower a person's resistance, increasing the risk of
reactivation of inactive tuberculosis, but he could not say this was a certainty. Lengel's theory
is that hepatitis could reactivate tuberculosis because it causes a person to eat less, leading to
malnutrition, which is one of the risk factors for reactivation. But, Lengel doubts Blain's hepatitis
was as severe as that. Lengel also testified that smoking is not listed in the internal medicine,
infectious disease, and pulmonary textbooks as a risk factor for reinfection from tuberculosis, but
Lengel would assume smoking would be a risk factor.

 Although the evidence is conflicting, there is some evidence to support the jury's
verdict. In addition, considering all of the evidence in the record, we do not find that the
evidence of contribution from COPD, arthritis, or Hepatitis B is so overwhelming as to render
the jury findings wrong or unjust. We therefore find no abuse of discretion and overrule the
Director's first six points of error.

 The Director's three remaining points address jury questions on which Blaine bore
the burden of proof. In points seven and eight, the Director complains that there is either no
evidence or insufficient evidence to support the jury's finding that Blaine's occupational disease
is the producing cause of total incapacity. In point nine, the Director complains that the evidence
is insufficient to support the jury's finding that Blaine's total incapacity was permanent.

 In reviewing "no evidence" points, we consider only the evidence and inferences
that tend to support the finding and disregard all evidence and inferences to the contrary. Garza
v. Alviar, 295 S.W.2d 821, 923 (Tex. 1965). If there is any evidence of probative value, we must
overrule the point. Id. In reviewing an "insufficient evidence" point, we consider all of the
evidence both supporting and contrary to the jury's finding to determine if the finding is so against
the weight of the evidence as to be manifestly unjust. In re King's Estate, 244 S.W.2d 660, 661
(Tex. 1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986). The Director
argues that Blaine's back problems, rather than her tuberculosis, cause her incapacity, and that
her tuberculosis has been cured. Therefore, the Director claims, the evidence is insufficient to
support findings of total and permanent incapacity. However, Blaine's theory of the case is that
her back problems are the result of a fall caused by peripheral neuropathy which resulted from
the INH prescribed for her tuberculosis. As the jury was instructed, occupational disease includes
any other diseases or infections that may naturally result from having an occupational disease and
the effects of treatment for the disease. See 1971 Tex. Gen. Laws, ch. 834, § 1, at 2539 (Tex.
Rev. Civ. Stat. Ann. art. 8306, § 20, since repealed); Texas Employers' Ins. Ass'n v. Eskue, 574
S.W.2d 814, 818 (Tex. Civ. App. 1978, no writ); Hartford Accident & Indem. Co. v. Thurmond,
527 S.W.2d 180, 190 (Tex. Civ. App. 1975, writ ref'd n.r.e.). Thus, the evidence summarized
above is legally and factually sufficient to support the jury's finding of total incapacity. We
overrule the Director's seventh, eighth and ninth points of error.

 Finding no error, we affirm the trial court's judgment.



 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Affirmed

Filed: July 8, 1992

[Do Not Publish]
1. Blaine argues that the Director has waived points of error one through nine by failing to
timely file the trial exhibits. These exhibits were not filed until June 5, 1991, after the March
21, 1991, deadline for filing the Transcript and Statement of Facts, See Tex. R. App. P. Ann.
54(a) (Pamph. 1992), but before submission of the case on January 15, 1992. Blaine is
mistaken. Rule 54(a) applies only to the Statement of Facts and the Transcript; exhibits may
be filed at any time up to submission without leave of court.