**CHRYSLER CORPORATION, et al., Appellants,**

v.

**Andrew ROBERSON, et ux., Appellees.**

**No. 6183.**

Court of Civil Appeals of Texas, Waco.

July 16, 1981.

Rehearing Denied Aug. 6, 1981.

452

William R. Simcock, Stanley E. Crawford, Jr., Cox & Smith, Inc., Jack M. McGinnis and Larry J. Benson, Pauling, McGinnis, Whittington, Benson & Gerwertz, Frank S. Morrill, San Antonio, for appellants.

H. David Peeples, Rudy A. Garza, Tinsman & Houser, Inc., San Antonio, for appellees.

HALL, Justice.

This is a deceptive trade practices case based upon breach of implied warranty of merchantability in which the purchasers of a new automobile recovered judgment for trebled damages and attorney's fees against the manufacturer and seller of the car. We affirm the judgment.

On February 15, 1977, plaintiffs Andrew Roberson and wife, Marjorie Roberson, purchased a new Plymouth Volare automobile from defendant Chrysler Plymouth City, Inc. ("Dealer"). The automobile was manufactured by defendant Chrysler Corporation ("Chrysler"). Plaintiffs filed this suit on October 11, 1977, under the provisions of the Texas Deceptive Trade Practices—Consumer Protection Act based upon the asserted breach by defendants of an implied contractual warranty set forth in § 2.314 of the Texas Business and Commerce Code that the automobile was merchantable and fit for ordinary use. In their trial pleading, filed on December 18, 1978, plaintiffs alleged that since taking delivery of the Volare automobile they have had innumerable mechanical difficulties with the car and have repeatedly taken it back to Dealer and another Plymouth dealership for repairs; that the difficulties included malfunctioning windows, speedometer, air conditioning, and "serious safety-threatening malfunctions such as brakes, transmission, rear end, and exhaust system"; that the car is "still experiencing problems such as mirror falling apart and a clunking noise in the rear end"; that plaintiffs have taken care of the car, have not misused it in any way, and have repeatedly returned it to Dealer for attempted repairs; that when sold the car was not fit and merchantable for ordinary use, and that it still is not after reasonable attempts at repair; and that plaintiffs have been adversely affected by defendants' breach of the implied warranties.

Plaintiffs pleaded the following damages: (1) the difference between the value of the car "as warranted and its value as delivered" in an amount not to exceed $5,913.00; (2) court costs, expenses, attorneys' fees, and prejudgment interest; (3) "consequential damages such as aggravation, grief, inconvenience and mental anguish, loss of use and loss of time," in an amount not to exceed $5,000.00; and (4) reasonable repair costs incurred in the amount of $300.00. They prayed for recovery of the above damages, trebled, under the Deceptive Trade Practices Act.

Dealer answered with a general denial, and with special pleas that when sold the car was fit for all purposes and uses intended by the parties; that since delivery, Deal-

er has satisfied all warranties and "has attempted in all matters to put the vehicle in proper perspective and order"; that the "innumerable mechanical difficulties incurred" by plaintiffs did not result from Dealer's repairs, but were caused by plaintiffs' misuse and abuse of the car; and that, in any event, plaintiffs were not entitled to recover treble damages under the Deceptive Trade Practices Act because they had not given Dealer "any reasonable opportunity to correct any defects in this automobile" as alleged in their petition. Alternatively, Dealer answered that plaintiffs were not entitled to any damages against Dealer under the Deceptive Trade Practices Act because plaintiffs were not given any warranty by Dealer, but "only by Chrysler as specified in the order form."

Chrysler answered with a general denial, and it specially denied that it gave any warranty or was bound by any warranty in connection with the sale of the vehicle to plaintiffs "other than a printed limited warranty that is routinely delivered to the purchasers of new Chrysler Corporation automobiles."

The case was tried to a jury in April, 1979. The jury responded as follows to the numbered special issues:

1. Found that the 1977 Volare automobile was not of merchantable quality on the date of sale.

 In connection with this issue, the jury was instructed that "an automobile is not of 'merchantable quality' unless it is fit for the ordinary purposes for which automobiles are used."

2, 3. Found that within a reasonable time after plaintiffs discovered or should have discovered that the car was not of merchantable quality, they notified Chrysler and Dealer.

4. Failed to find that Chrysler was not given written notice of plaintiffs' complaint before suit was filed.

5. Failed to find that Dealer was not given written notice of plaintiffs' complaint before suit was filed.

6. Failed to find that Chrysler was not given a reasonable opportunity to cure the defects or malfunctions before suit was filed.

7. Failed to find that Dealer was not given a reasonable opportunity to cure the defects or malfunctions before suit was filed.

8(A). Found that if the Volare automobile had been of merchantable quality it would have had a value of $5,580.48 when it was delivered to plaintiffs on February 18, 1977.

8(B). Found that the value of the car "as delivered" was $4,073.48.

 In connection with issue 8(B) the jury was instructed "you will consider only such diminution of value, if any, which you may find from a preponderance of the evidence was caused by such car's not being of merchantable quality."

8(C). Failed to award plaintiffs any damages for reasonable costs of repairs "proximately caused by the car's not being of merchantable quality."

8(D). Awarded plaintiffs $630.20 for their loss of use of the car "proximately caused by the car's not being of merchantable quality."

8(E). Awarded plaintiffs $500.00 for their loss of time "proximately caused by the car's not being of merchantable quality."

 In connection with issues 8(C), 8(D) and 8(E) the jury was instructed "do not include any amount you may have considered in answering Issue 8(B)."

9(A), (B), (C) and (D). Awarded plaintiffs attorney's fees in the amount of $6,000.00 for the trial of the case, and additional separate amounts totaling $3,750.00 in the event of appeals through the Supreme Court of Texas.

Judgment was rendered on the verdict that plaintiffs recover from defendants jointly and severally "the sum of $7,911.60, which represents the actual damages found by the jury in special issues 8(A), 8(B), 8(D) and 8(E), which have been trebled by the court under the provisions of Section 17.50 of the Texas Business and Commerce Code," plus the attorney's fees awarded by the jury.

Chrysler and Dealer contend that the jury's finding that the Volare automobile was not of merchantable quality and the finding that the automobile was worth less than the purchase price of $5,639.98 when it was delivered to plaintiffs are not supported by any evidence. Alternatively, defendants assert the evidence is factually insufficient to support those findings. We overrule these contentions.

■ Proper resolution of a complaint that a finding is not supported by any evidence permits consideration of only the evidence and its inferences that favor the finding; a correct decision on a complaint that the evidence is factually insufficient to support the finding requires that we consider and weigh all of the evidence. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The automobile in question was a Plymouth Volare Premier two-door, which was the higher line of Volare automobiles. It was equipped with a 318 cubic inch displacement engine, an automatic transmission, air conditioning, and deluxe appointments. It was manufactured by defendant Chrysler, and it was delivered new to plaintiffs by defendant Dealer on February 18, 1977. Plaintiffs bought the car as a gift for their daughter on her 18th birthday. She was the principal driver of the car. The unit purchase price paid by plaintiffs was $5,580.48. Chrysler provided a written "Limited Warranty" on the car setting forth the following "Basic Coverage":

"For the first 12 months or 12,000 miles of use, whichever occurs first, any part of this vehicle supplied by Chrysler, except tires, which proves defective in normal use will be repaired or replaced by the Selling Dealer using new or remanufactured parts. In addition the selling dealer will perform any adjustment service required as a result of a manufacturing deficiency during the first 90 days of normal use. Thereafter adjustments will be considered owner maintenance responsibility unless required as a direct result of repair or replacement of a defective part under this warranty.

\*　\*　\*　\*　\*　\*

"This warranty will not apply to: ... Repairs required as a result of failure to properly care for or maintain this vehicle, fire, accident, abuse or negligence."

Dealer recognized its responsibilities under this limited warranty, but it did not provide any other warranty.

In the words of Dealer's general manager, the Volare "was a problem car from the beginning." On February 21, 1977, when the car had been driven 458 miles, plaintiffs returned to Dealer with the car because the mechanism for reclining the seat was not working, and for minor repairs on the upholstery. Dealer made some repairs. On March 7, 1977, plaintiffs returned the car to Dealer because the tail pipe and muffler on the exhaust system had separated and were dragging the ground, the car was pulling to the right, the reclining-seat mechanism still was not working, the right door window would not seal and it leaked water and air, and the motor would stall and die when brought to a stop in traffic and was then hard to start. The mileage on the car was 1,383. Repairs were made by Dealer. On April 9, 1977, at mileage 2,926, there was a "metal to metal grinding noise" in the rear wheels when the brakes were applied, the right window would not roll up or down regardless of the pressure applied, the motor was still stalling (later determined to be a carburetor problem), the car still pulled to the right, the speedometer was making a loud "humming" noise, and the speedometer needle would "jiggle" and jump back and forth and the driver could not determine the speed being traveled. Repairs were made. On April 25, 1977, at mileage 3,364, there was a "terrific" metal to metal grinding noise in the rear wheels upon application of the brakes, the muffler and tail pipe had separated again and were dragging the ground, and there was trouble with the radio. When the rear wheels were removed, it was learned that the rear brake shoes had come loose and substantially disintegrated and they fell to

the ground. Repairs were made. On May 2, 1977, at mileage 3,573, the left rear wheel locked in reverse gear and the car could not be backed out of plaintiffs' driveway. The car was towed to Dealer by a wrecker. Repairs were made. On May 25, 1977, at mileage 4,499, the right window was stuck again (in open position), the speedometer was still noisy, the engine was still stalling and dying, and the brakes were not operating properly. When the brakes were applied, only the left rear wheel would brake, and it would lock and skid. Repairs were made. On May 31, 1977, at mileage 4,776, the transmission and the "rear end" (the differential) completely failed. The car would not move in any gear, and the "Park" gear would not hold. The air conditioning system produced only hot air. The braking problem involving the left rear brake still existed. Dealer completely replaced the transmission, rebuilt the differential, repaired the left rear brake, and replaced a seal in the air conditioning system. On June 8, 1977, at mileage 4,923, the window still leaked water and air, the engine was still running rough, and the air conditioning system had quit cooling again. Repairs were made. On June 15, 1977, at mileage 5,177, the brakes were still producing the grinding noise and not functioning properly, and the window had locked open again. Dealer replaced the brakes and brake drums on the rear and a brake arm, and it repaired the window channel and the window roll regulator. On July 29, 1977, at mileage 5,799, the brakes were still making the metal grinding noise, the speedometer needle was still jumping, and the right door lock did not work. Plaintiffs took the car to a different dealer, O. R. Mitchell Chrysler-Plymouth, because they had "given up" on defendant Dealer "being able to fix anything to hold up." O. R. Mitchell replaced the brake master cylinder, replaced the speedometer head, and repaired the door lock. On August 27, 1977, at mileage 6,956, the inside rearview mirror which was glued to the windshield had fallen off, and there were problems with the radio speakers. The Mitchell dealership reglued the mirror and repaired the speakers. On September 8, 1977, the rearview mirror had come loose, again. The Mitchell dealership reglued the mirror, and also replaced a transmission seal. On September 20, 1977, the bearings on the alternator had worn out. The alternator was rebuilt. The alternator is an important part of the car's electrical system.

Plaintiffs filed this suit on October 21, 1977. At that time the mileage on the car was 10,882. On that day the speedometer cable and a seal in connection with it were replaced by defendant Dealer. Thereafter, plaintiffs made five other trips to the dealerships for repairs. These included a factory brake recall, a factory carburetor recall (the carburetor was replaced on this recall at mileage 22,403), a "clunking" noise in the transmission or differential, the rearview mirror falling off again, and other problems. At the time of trial (April, 1979) the door windows still leaked water and air (when it rained the floor board was "standing in water"); the floor mats were mildewed and rotting and "smelling badly" as the result of the rain leaking onto the floorboard; the motor did not start easily and did not idle properly, and the automatic choke mechanism was not working correctly; the starter was making "an awful noise, like it [was] going out"; and there was still a "clunking noise" in the transmission or differential.

Plaintiffs' expert witness, Dan Scruggs, testified that problems with the engine, steering, electrical system, brakes, transmission and differential of a car are major problems; that on the Volare in question there was a failure in the carburetor, a failure in the electrical system (the alternator), a complete failure of the transmission, a complete lock-up of the differential, and a complete brake failure; that the car did not show misuse; that plaintiffs' problems with the car, several recurring many times, resulted from defective materials and workmanship in the manufacture of the car; and that those problems would have arisen regardless of who bought the car. He said a new car should not have "a failure of four or five major components"; that it "was

very abnormal for a car to have as many problems and be tied up as often as this car was"; that the Volare "was not up to the quality normally expected from Chrysler or any other manufacturer"; and that when delivered to plaintiffs the car was not fit for the ordinary and intended use of providing "dependable and reliable transportation." He expressed the opinion that the value of the Volare at the time it was delivered to plaintiffs, even with the warranty provided, was "roughly" $2,400.00.

There was other evidence not detailed by us which favored the jury's answers to special issues 1 and 8(B).

Defendants' proof was to the effect that the Volare was merchantable when delivered to plaintiffs; that plaintiffs' problems with the car, particularly with the brakes, were caused by abuse and misuse; and that the value of the car when sold, especially in the light of Chrysler's warranty, was probably $6,000.00.

■ Following the tests set forth above, we hold the evidence was both legally and factually sufficient to support the jury's findings that the Volare was not of merchantable quality, and that its value as delivered was $4,073.48.

Both defendants contend that plaintiffs' witness Scruggs was not qualified to express an opinion on the value of the Volare as delivered, and also that his testimony on that issue should not have been admitted because it was "purely speculative." Additionally, Chrysler asserts that the calculation of diminution of value upon which the judgment was based was decided "upon an entirely erroneous theory of law." These contentions are overruled.

■ The Uniform Commercial Code ("UCC") as adopted in Texas is codified in chapters 1 through 11 of the Texas Business And Commerce Code (V.T.C.A., Bus. & C.). Plaintiffs based this suit upon the following provisions in § 2.314: "(a) Unless excluded or modified (Section 2.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind

... (b) Goods to be merchantable must be at least such as ... (3) are fit for the ordinary purposes for which such goods are used; ... " § 2.714(b) and (c) provide, "(b) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. (c) In a proper case any incidental and consequential damages under the next section may also be recovered." Scruggs had been involved in the sales, repairs and servicing of new and used cars at various dealerships for 30 to 35 years. At the time of trial he was engaged in the business of reconditioning and selling automobiles. His value testimony was based upon an examination of the Volare, and a review of plaintiffs' problems with it and the dealers' repair invoices. Whether a witness is qualified to testify as an expert is addressed to the sound discretion of the trial court. *State v. Griffis*, 300 S.W.2d 220, 222 (Tex.Civ.App.—Waco 1957, writ ref'd n. r. e.); *City of Teague v. Stiles*, 263 S.W.2d 623, 628 (Tex.Civ.App.—Waco 1954, writ ref'd n. r. e.). There was no abuse of discretion here. The essence of Scruggs's testimony was that the manufactured defects inherent in the Volare at the time of its purchase by plaintiffs, even with Chrysler's limited new car warranty, would have decreased the value of the car approximately $3,500.00. It was the assumption of the fact of the defects at the time of purchase in this value testimony which defendants class as "crystal balling" and "speculation." Generally, once a person is qualified as an expert he may give his opinion on any matter within the realm of his expertise, so long as the facts upon which his opinion is based are within his personal knowledge or otherwise are properly in evidence. *Southwestern Bell Tel. Co. v. Sims*, 615 S.W.2d 858, 862 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). In the light of Scruggs's expertise, and the nature of the issue, we hold the admission of the testimony for the jury's consideration was proper. See 2 Texas Practice, Law of Evidence, § 1422 (3rd ed. 1980).

UCC § 2.316(d) provides, "Remedies for breach of warranty can be limited in accordance with the provisions of this chapter on liquidation or limitation of damages and on contractual modification of remedy (Sections 2.718 and 2.719)." § 2.719(c) provides, "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." Under the heading of its "Basic Coverage," Chrysler's limited warranty set forth in bold type "Additional Limitations Or Exclusions" which included the following: "Consequential damages such as loss of use of the vehicle, loss of time, inconvenience, expense for gasoline, telephone, travel or lodging, loss or damage to personal property, commercial loss or loss of revenue." At the time of purchase of the vehicle on February 15, 1977, plaintiffs and Dealer signed a purchase agreement which set forth the monetary details of the sale, and stated on its face: "This comprises the entire agreement and no other agreements or understandings concerning same are valid. I have carefully read and understand all the terms and conditions of this agreement as they are stated above and on the reverse side." The reverse side contained eleven numbered paragraphs under the heading "Additional Terms And Conditions." Paragraph nine provided that no warranties, expressed or implied, had been made by Dealer or Chrysler other than Chrysler's limited new car warranty, which was incorporated by reference as "the only warranty" applicable to the Volare. Defendants assert that in view of the terms of these agreements expressly excluding consequential damages for loss of use of the vehicle and loss of time, the trial court erred in rendering judgment for those damages as awarded by the jury in answers to special issues 8(D) and 8(E). These contentions are overruled. Defendants' defense that plaintiffs' recovery of consequential damages for defendants' breach of implied warranty was contractually excluded by the instruments in question was an affirmative defense required by the provisions of Rule 94, Vernon's Tex.Rules Civ.Proc., to be expressly pleaded. It was not pleaded by either defendant, and it was not submitted to the jury. It was therefore waived. Rule 279, Vernon's Tex.Rules Civ.Proc.; *Ellis Drilling Corporation v. McGuire*, 321 S.W.2d 911, 914 (Tex.Civ.App.—Eastland 1959, writ ref'd n. r. e.).

The jury was asked in special issue 8(A) to find the value of the Volare at the time of sale "if it had been of merchantable quality," and in special issue 8(E) to find the value "as delivered." In connection with issue 8(B) the jury was instructed "You will consider only such diminution in value, if any, which you may find from a preponderance of the evidence was caused by such car's not being of merchantable quality." Defendants contend that the trial court erroneously rendered judgment on the jury's answers to these issues because there was no issue submitted to the jury and thus no finding that defendants' breach of merchantability was a "proximate cause" of the difference in the values found by the jury. Plaintiffs assert (1) that this complaint was not preserved by proper objection to the court's charge to the jury, and (2) that the UCC does not require a finding of proximate cause on this damage issue.

The record shows that special issue 8(B) was originally proposed for submission to the jury without the instruction concerning causation set forth above. Chrysler objected to the original proposal, as follows:

"Now, in connection with Issue 8, Part B, this defendant objects to the submission because neither the issue nor any other issue in the charge of the court requires that this issue be causally related to a finding of lack of merchantable quality.

"And it is our contention that there should be an issue, a separate issue, or that the issue *itself should relate this* question of diminished value causally to the question of lack of merchantable quality and it is our belief that this—that proximate cause applies. If we are

wrong, we request that it be producing cause, but we say that there should be a causal relation between this diminished value and finding of unmerchantable quality and that the issue should be so framed that the jury's consideration of diminished value relates only to the diminished value resulting from unmerchantable quality, if they so find. This issue does not limit the jury's consideration of diminution in value to that resulting solely from merchantable quality."

Dealer joined Chrysler in making the objection. Immediately thereafter, the court added the instruction that in answering issue 8(B) the jury could consider "only such diminution in value . . . which was caused by such car's not being of merchantable quality." No further objections were made by defendants regarding the issue or the instruction added to it.

■ "A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection." Rule 274, Vernon's Tex.Rules Civ.Proc. An objection does not meet the requirements of this rule unless the defect relied upon and the grounds of the objection are stated specifically enough to support the conclusion that the trial court was fully cognizant of the ground of complaint and deliberately chose to overrule it. *Monsanto Company v. Milam*, 494 S.W.2d 534, 537 (Tex.1973); *McDonald v. New York Central Mutual Fire Ins. Co.*, 380 S.W.2d 545, 550 (Tex.1964). In our case, defendants assert on appeal that the issue of proximate cause should have been submitted in connection with special issue 8(B) because under the proof, including Scruggs's value testimony, defendants' breach of warranty was not the only cause of diminution of value. Defendants did not urge this ground (or any other ground) in their objection. Additionally, although defendants expressed the "belief that proximate cause applies," it is clear from the beginning to the end of their objection that their specific complaint was that the charge did not require that any diminution in value found by the jury in response to special issue 8(B) be causally related to defendants' breach of warranty. This complaint was not ignored by the court. It was promptly met with an instruction on causation. There was no further objection from defendants concerning the failure of the court to charge on proximate cause. We hold the complaint in question was not preserved for review. Plaintiffs' contention that the UCC does not require a finding of proximate cause on the damage issue in question is therefore immaterial.

■ Chrysler asserts that the trial court erred in instructing the jury not to include any amount considered in answering special issue 8(B) when answering special issues 8(C), (D) and (E) as to cost of repairs, loss of use and loss of time proximately caused by the unmerchantable quality of the Volare "because said instruction improperly informed the jury that they could incorporate improper elements of damages into their finding as to value of the Volare as delivered and thus was reasonably calculated to cause and probably did cause the rendition of an improper finding in response to Special Issue 8(B)." Even if this complaint is correct, the error was harmless. The instruction effectively prevented any double recovery of damages by plaintiffs. The use of an instruction for this purpose is proper. *French v. Grigsby*, 567 S.W.2d 604, 608 (Tex.Civ.App.—Beaumont 1978), writ ref'd n. r. e., 571 S.W.2d 867 (Tex.1978). Rule 434, Vernon's Tex.Rules Civ.Proc. provides that a judgment shall not be reversed on appeal unless the error complained of was reasonably calculated to cause and probably did cause the rendition of an improper judgment. The instruction in question was reasonably calculated to prevent, not cause, the rendition of an improper judgment. Chrysler's complaint is overruled.

Plaintiffs based this suit on § 17.50(a)(2) of the Deceptive Trade Practices Act which permits an action under the Act upon breach of an express or implied warranty. At all times relevant to this suit, the Act provided that a consumer who prevailed in such action was entitled to recover "three

times the amount of actual damages, plus court costs and [reasonable] attorneys' fees." When plaintiffs filed this suit in October, 1977, § 17.50A provided as follows:

"In an action brought under Section 17.50 of this subchapter, actual damages only and [reasonable attorneys' fees and court costs] may be awarded where the defendant:

. . . . .

"(2) proves that he had no written notice of the consumer's complaint before suit was filed, or that within 30 days after he was given written notice he tendered to the consumer (a) the cash value of the consideration received from the consumer or the cash value of the benefit promised, whichever is greater, and (b) the expenses, including attorney's fees, if any, reasonably incurred by the consumer in asserting his claim against the defendant; or

"(3) in the case of a suit under Section 17.50(a)(2) the defendant proves that he was not given a reasonable opportunity to cure the defects or malfunctions before suit was filed."

§ 17.50A was enacted by the Legislature in 1977, and became effective May 23, 1977. Acts 1977, 65th Leg., p. 604, ch. 216, § 6. Thus, although § 17.50A was effective when this suit was filed, it was not effective when the Volare was delivered to plaintiffs in February, 1977.

As shown above, in response to special issue 6 the jury failed to find that Chrysler was not given a reasonable opportunity to cure the defects or malfunctions in the Volare before suit was filed. Although Chrysler did not plead this defense, the record establishes that it was tried by implied consent of the parties under the provisions of Rule 67, Vernon's Tex.Rules Civ.Proc. Plaintiffs do not assert otherwise.

 Chrysler contends that the evidence conclusively established that it was not given a reasonable opportunity to cure the defects in the Volare before suit was filed, and, alternatively, that the jury's failure to find in Chrysler's favor on this issue was not supported by factually sufficient evidence. These contentions are overruled. In June, 1977, when the car had been driven approximately 5,000 miles, plaintiffs contacted Bob Covey, Dealer's general manager, and requested that Dealer replace the Volare with another. By this time, the car had developed the continuing problems with the brakes, transmission, differential, carburetor, leaking and locking window, and speedometer. Covey was fully familiar with all of those problems. Plaintiffs explained to Covey that they feared for the life of their daughter, who was the principal driver of the Volare. Covey told plaintiffs that replacement "is not up to the dealership, it's up to the factory"; and he advised plaintiffs to call Chrysler. The next day plaintiff Mrs. Roberson called Chrysler's representative in Detroit, Mr. Graysher. She detailed the problems with the car to him, "the brake jobs, the transmission, the rear end, the stalling in traffic," and she told him that plaintiffs believed they "had a life endangering vehicle" and that they "were very, very concerned." Graysher told Mrs. Roberson "It's not up to the Chrysler Corporation; it's up to the Dealership." Chrysler did not take any action in response to this call.

On August 19, 1977, after plaintiffs had continued to experience problems with the car, and when the mileage was less than 7,000, plaintiffs' attorney sent a letter to Chrysler in which he outlined the problems with plaintiffs' Volare, stated that "Mr. Bob Covey at Chrysler-Plymouth City in San Antonio will be able to tell you in greater detail about the problems the Robersons have had with this car," explained that the car posed a danger to the Roberson family and the public at large, and called for Chrysler to replace plaintiffs' car with a similar Volare without further expense to plaintiffs. Chrysler was informed in the letter that if it did not make a reasonable response within 30 days, suit would be filed under the Texas Deceptive Trade Practices Act. Chrysler's sole response to this demand was a letter from its customer relations manager to plaintiffs' attorney to the effect that it would honor its written war-

ranty. Although Chrysler's district manager testified that he had "never heard" of Chrysler replacing a car, Scruggs's testimony shows that when a new car develops as many major problems as plaintiffs' Volare did, "the whole automobile" is recalled "back to the factory."

We hold that the "cure" defense was not conclusively established in Chrysler's favor; and we also hold the jury's answer on this issue was supported by factually sufficient evidence.

A copy of the letter sent to Chrysler by plaintiffs' attorney was mailed by the attorney to Bob Covey, Dealer's general manager. Dealer concedes in its brief that it received this copy. However, it is undisputed that Dealer did not receive any other written notice from plaintiffs regarding their claim of breach of implied warranty of merchantability before this suit was filed.

In response to special issue 5, the jury failed to find that Dealer was not given written notice of plaintiffs' complaint before suit was filed. Again, although Dealer did not plead this defense, the issue was tried by consent.

Dealer asserts, in effect, that the evidence conclusively established that it did not receive the written notice required by the Deceptive Trade Practices Act, contending that the letter sent to it was "legally insufficient to apprise [Dealer] of the complaint against it." Alternatively, Dealer asserts that the jury's answer to special issue 5 was not supported by factually sufficient evidence.

Although disputed, there is evidence in the record which supports the determination that the copy of the letter sent to Covey contained the notation at its base, "cc: Robert E. Covey, Chrysler Plymouth City, 7000 N.W. Loop 410, San Antonio, Texas," and that the envelope containing the letter was addressed to Covey in that fashion, that is, to "Robert E. Covey, Chrysler Plymouth City, 7000 N.W. Loop 410, San Antonio, Texas." And it is undisputed that Dealer's business is located at that address.

Dealer concedes that plaintiffs' complaint in the letter to Chrysler was breach of warranty of merchantability. However, Dealer argues that the letter only asserted a breach by Chrysler, that the letter "is not addressed to nor does it in any way assert a breach of warranty by [Dealer]," that "the letter does not allege a cause of action against [Dealer]," and that the letter "merely informs [Dealer] that Chrysler Corporation may be contacting it with respect to the plaintiffs' asserted claim against Chrysler Corporation."

Covey's testimony shows that by the time this letter was written he had talked to plaintiff Mr. Roberson "many, many, many times" regarding complaints with the car, and "got tired of him"; and that Mr. Roberson had become "upset" and "hot" and "had a right to be hot." Moreover, as we have already stated, plaintiffs had previously orally requested Dealer to replace the car.

The notice provision in question did not require the written notice to allege a cause of action or threaten a lawsuit. Its obvious purpose was to inform the seller of the buyer's complaint (in our case, breach of merchantability) and thus provide opportunity for settlement of the matter without litigation.

█ § 17.44 of the Deceptive Trade Practices Act provides that the Act "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." In the light of this rule, we hold the letter copy was sufficiently directed to Dealer, and that under the circumstances of our case it satisfied the notice provision in § 17.50A(2), within the meaning and purpose of that statute. Dealer's contrary contentions are overruled.

Defendants' remaining points and contentions are also overruled.

█ Plaintiffs assert by cross-point that the trial court erred in failing to grant

them prejudgment interest based upon the amount ($1,507.00) found by the jury to be the diminished value of the Volare by reason of the breach of warranty. Plaintiffs filed a motion for judgment on May 14, 1979, in which they moved for recovery of the prejudgment interest they now claim. The judgment was signed by the trial judge on May 16, 1979. The record does not show that plaintiffs' motion for judgment was presented to or acted upon by the trial court, or that the claim for prejudgment interest was otherwise presented to the court either before or after judgment. We hold plaintiffs' complaint was not preserved for review. 4 Tex.Jur.3rd 143, Appellate Review § 96. It is overruled.

During the taking of the deposition of Mr. Roberson, Dealer's general manager, Bob Covey, entered the room, sat down beside plaintiffs' attorney (not knowing who he was), and whispered to the attorney that plaintiffs "bought a piece of junk." This statement was made voluntarily by Covey without any solicitation or prior remarks by plaintiffs' attorney. In their second cross-point, plaintiffs assign error to the trial court's exclusion of Covey's statement from the jury's consideration. Since this complaint could only be material to a new trial, we need not decide its merits.

The judgment is affirmed.