CV0-107 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-107-CV





CEDAR FIBER COMPANY, INC.,



 APPELLANT


vs.





ROBERT MURR, ET. AL.,



 APPELLEES


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 450,059, HONORABLE JAMES MEYERS, JUDGE



 




PER CURIAM


 Cedar Fiber appeals a take-nothing judgment rendered against it after a jury trial. 
Cedar Fiber sued Robert Murr, Charles Murr, and Andrew McMahan, Jr., former employees and
officers of Cedar Fiber; Wesley Hooker, a former employee of Cedar Fiber; and Chem-Pac, Inc.,
the company for which the individual appellees began working after leaving employment with
Cedar Fiber (the Murrs, for simplicity). Cedar Fiber alleged causes of action for breach of
confidential relationships and conspiracy to misappropriate trade secrets and confidential
information. The Murrs counterclaimed for a declaratory judgment that a previous settlement
agreement barred this suit.

 Cedar Fiber brings three points of error, contending that the trial court erred in: 
(1) giving an improper definition of the term "confidential information or trade secret";
(2) refusing to submit a proper instruction on whether Cedar Fiber possessed trade secrets or
confidential information in a unique combination of characteristics and components; and
(3) rendering judgment for appellees based upon the jury's failure to find that Cedar Fiber
possessed any confidential information or trade secrets in response to question one because the
jury's answer to that question is so contrary to the great weight and preponderance of the evidence
as to be clearly wrong and unjust.



BACKGROUND



 Cedar Fiber owns and operates a mill in Junction, Kimble County, Texas. The
mill extracts oil from chipped cedar logs and sells it in the essential oils market. Cedar Fiber also
sells for various uses that part of the chipped cedar not used as boiler fuel in the steam distillation
process. In April 1984, Kimble County Industries, Inc., bought Cedar Fiber. C. Murr was one
of the founders and principal owner of Cedar Fiber before its sale. C. Murr, R. Murr, and
McMahan were employees and officers of Cedar Fiber. 

 Beginning in 1987, R. Murr, C. Murr, McMahan, Hooker and other principals of
Chem-Pac, the company they joined after leaving Cedar Fiber, began planning and designing a
cedar oil mill to be built on property adjacent to Cedar Fiber's plant. In October 1987, R. Murr
submitted to the Texas Air Control Board an application for a permit to construct and operate this
plant. In September 1988, Cedar Fiber sued, seeking temporary and permanent injunctions based
upon claims of improper disclosures of trade secrets and confidential information to various
individuals and the Air Control Board.

 Cedar Fiber contended that it possessed trade secrets involving equipment
modifications and specific details of manufacturing processes developed through experimenting
with the batch production method of producing cedar oil by steam distillation. It also contended
that it had a trade secret in the unique way in which the plant, equipment, and processes operated
together and fit into a "production matrix."

 Cedar Fiber produced witnesses who testified about its general operations,
equipment, logbooks, production cycle, financial operating data, and other information. They
identified the aspects of each that Cedar Fiber considered protected as a trade secret. Cedar Fiber
also claimed trade secret protection for the unique combination or unified process as a whole. 
Cedar Fiber's witnesses testified that the interrelation of all of the production equipment and
processes produced quality products at the lowest possible cost. On the other hand, the Murrs'
witnesses testified that the process used at the Cedar Fiber mill was the common method of batch
production using steam distillation. According to them, developments at one mill, including
Cedar Fiber, customarily had been shared among others in the industry.



CHARGE ISSUES



 In point of error one, Cedar Fiber contends that the trial court erred in submitting
an improper definition of the term "confidential information or trade secret." In point of error
two, Cedar Fiber contends that the trial court erred in refusing to submit to the jury a proper
instruction concerning whether Cedar Fiber possessed trade secrets or confidential information
in a combination of characteristics and components, each of which by itself is in the public
domain, but the unified process, design or operation of which in a unique combination affords a
competitive advantage.

 The trial court gave the following definition:


 The term "CONFIDENTIAL INFORMATION OR TRADE SECRET" means any
process, information, or compilation of information, formula, pattern or device
which is used in one's business and which gives an opportunity to obtain an
advantage over competitors who do not know or use it. In order to be a trade
secret, there must be a substantial element of secrecy; however, secrecy need not
be absolute. Matters of public knowledge or general knowledge in an industry
cannot be appropriated as a secret. Personal efficiency, inventiveness, skills and
experience which an employee develops through his work belong to him and not
his former employer.


Cedar Fiber contends that it specifically objected to the definition as given and submitted to the
court a less restrictive and confusing definition which deleted the last two sentences of the
definition. The Murrs contend that Cedar Fiber did not make a proper objection because it
objected only to this definition as it was used in conjunction with question three, not to the
definition itself. Question three read: (1)



 Do you find from a preponderance of the evidence that on April 30, 1984, Cedar
Fiber Company, Inc. possessed confidential information or trade secrets in a
combination of characteristics and components in its processes, methods of
business, equipment, products and/or information, each item of which, by itself,
may be in the public domain, but the unified process, design or operation of which
in unique combination, work to competitive advantage?


The court held a charge conference on August 17, 1989. Cedar Fiber began by tendering to the
clerk for filing the plaintiff's requested charge. Counsel then began with the following:



 With respect to the Court's definition of the term "confidential information" or
"trade secret," in conjunction with Issue No. 3, which inquires concerning the
combination of characteristics and components, I think we have created a serious
error there in that we submit an issue, No. 3, which the instruction specifically
precluded the jury from answering in favor of the plaintiff. Specifically, the issue
asks whether there can be a -- whether there is a combination of characteristics
and components, each item of which may be in the public domain, but the unified
process of which a unique combination affords a competitive advantage.


 So the issue asks and would allow an answer affirmatively if there are items that
are in the public domain. However, in the instruction of confidential information
or trade secrets, we have specifically told the jury they cannot consider anything
that is in the public domain. Specifically we have said, "Matters of public
knowledge cannot be appropriated as a secret."


 Having told the jury that they cannot consider matter of public knowledge a
secret, and then asking them in question No. 3, if indeed a combination of items
that are in the public domain can be a trade secret, we have created an inherent
logical conflict; and the jury following the instruction given cannot, it is our
position, answer Question No. 3. We view that as a very, very serious error in
the charge as drafted and would request that the Court submit the instruction we
have previously tendered to go along with that Issue No. 3. 


Counsel then went on to object to questions two through seven; the definition of "confidential
relationship"; the failure to charge on conspiracy; the omission of instructions concerning certain
employment agreements and a settlement agreement. Then counsel said, "That concludes our
objections, Judge. Thank You." The court responded:  "They are overruled." 

 To preserve error about its complaint of a defective submission, Cedar Fiber had
to object to the submission with specificity. Tex. R. Civ. P. Ann. 274 (Supp. 1991). The
objectionable matter and the grounds for objection must be pointed out with specificity. Failure
to do so waives error. Monsanto Co. v. Milam, 494 S.W.2d 534, 537 (Tex. 1973); Chrysler
Corp. v. Roberson, 619 S.W.2d 451, 459 (Tex. App. 1981, no writ). 

 The objection in question is not adequate to preserve error on appeal. The purpose
of the requirement that an objection be specific is to allow the trial court the opportunity to correct
errors in the charge. Castleberry v. Branscum, 721 S.W.2d 270, 276 (Tex. 1986); K-Mart Corp.
v. Martinez, 761 S.W.2d 522, 524 (Tex. App. 1988, writ denied). The objection in question was
to the use of the definition as it interacted with question three. This interaction was emphasized
several times. Counsel did not object to the definition itself (as it did later to the definition of
"confidential relationship"). Counsel did not object to question one to which the definition also
related.

 Cedar Fiber also failed to preserve error with regard to the court's failure to submit
its requested instruction, which it raises in point of error two. To complain of the refusal to
submit a requested instruction, the instruction must be endorsed, "refused"; signed by the court;
and filed with the clerk. Tex. R. Civ. P. Ann. 276 (Supp. 1991); Greenstein, Logan & Co. v.
Burgess Marketing, Inc., 744 S.W.2d 170, 181 (Tex. App. 1987, writ denied). If there is no
endorsement by the court, the inclusion of a written request in the transcript will not preserve
error in failing to submit the question, definition, or instruction. Freedom Homes of Texas, Inc.
v. Dickinson, 598 S.W.2d 714 (Tex. Civ. App. 1980, writ ref'd n.r.e.).

 Cedar Fiber contends that we should not strictly construe Rule 276 or construe it
as the only method of preserving charge error, relying on American Motorists Insurance Co. v.
Lynn, 762 S.W.2d 229, 232 (Tex. App. 1988, writ denied). In American Motorists, the requested
charge had "denied" rather than "refused" written on it and had not been signed by the trial judge,
but the court of appeals held, based on the rest of the record, that error had been preserved. In
our case, however, we have nothing written on the copy of the charge included in the record. At
a hearing on the motion for new trial, at which the absence of this document from the file was
discovered, the judge said that his usual practice was to write "refused" on a party's requested
charge but he did not say that he remembered doing so for this particular charge. We overrule
points one and two.




SUFFICIENCY OF THE EVIDENCE



 In point of error three, Cedar Fiber contends that the trial court erred in rendering
judgment for the Murrs based on the jury's finding that Cedar Fiber did not possess confidential
information or trade secrets because the finding is not supported by sufficient evidence and is so
contrary to the great weight and preponderance of the evidence as to be clearly unjust. In
reviewing a factual sufficiency challenge, we first review all of the evidence. Having considered
all of the evidence we may set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); see generally, W. Wendell Hall, Standards of Appellate Review in Civil Appeals, 21
St. Mary's L.J. 865, 909 (1990). 

 In order to prove its case, Cedar Fiber needed evidence on the numerous factors
considered in determining whether trade secrets exist. See generally, Annotation, What is a Trade
Secret so as to Render Actionable its Use or Disclosure by Former Employee, 59 A.L.R. 4th 641
(1988). First, a secret must exist. The matter cannot be a matter of common knowledge in an
industry. Furr's Inc. v. United Specialty Advertising Co., 338 S.W.2d 762, 765 (Tex. Civ. App.
1960, writ ref'd n.r.e.). Reasonable measures must have been taken to protect the secrecy of the
trade secret. Rimes v. Club Corp. of America, 542 S.W.2d 909 (Tex. Civ. App. 1976, writ ref'd
n.r.e.). The information sought to be protected must have been learned in confidence. Auto Wax
Co. v. Byrd, 599 S.W.2d 110 (Tex. Civ. App. 1980, no writ.).

 The jury, in the face of conflicting evidence, failed to find that Cedar Fiber
possessed confidential information or trade secrets. The Murrs produced evidence that before the
sale (2): Cedar Fiber did not consider any part of its manufacturing process to be a trade secret; that
its operations were open to its competitors and the public; that management freely exchanged
information with competitors in order to improve operations mutually; that the only security
measures in effect before the sale were for the purposes of safety, not for protection of trade
secrets; the records of production claimed by Cedar Fiber to be evidence of trade secrets were
production logs to which access was open; that the Murrs were never advised that they were under
a policy of confidentiality and were never advised that what they had learned could not be used
at a later date; that Cedar Fiber's operation was essentially the same as any other batch plant using
the same principles known to all in the industry to produce cedar oil.

 Cedar Fiber produced evidence to show: that it had taken security precautions,
including a fence around the plant and a night security foreman; that it limited access to
confidential information to management level employees and secured agreements from them
regarding confidential information; that it had conducted experiments to improve its plant process
with regard to the processing of the material, the plant layout, the production cycles, specific
pieces of equipment, and water quality; and that it kept extensive logs on these experiments which
would give a competitive advantage to one possessing the information.

 We do not pass upon the credibility of the witnesses or substitute our judgment for
that of the trier of fact. Clancy v. Zale Corp., 705 S.W.2d 820, 826 (Tex. App. 1986, writ ref'd
n.r.e.). The trier of fact had sufficient evidence from which it could conclude that no trade secrets
or confidential information existed. We overrule point of error three.



SUMMARY JUDGMENT ON THE MURRS' COUNTERCLAIM



 In their first cross-point of error, the Murrs contend that the trial court erred in
granting summary judgment against them on their counterclaim. Cedar Fiber, as plaintiff, sued
the Murrs, who counterclaimed for a declaratory judgment on a settlement agreement. In its
fourth amended petition, Cedar Fiber dropped all claims based on contract. It then moved for
summary judgment on the basis that it was bringing a claim founded on the tort of the intentional
misappropriation of trade secrets, and, as a matter of law, an intentional tort could not be
prospectively released by such an agreement. Therefore, all of Murr's defenses based on the
settlement agreement, as well as its counterclaim, should be summarily denied. Summary
judgment was granted on two grounds: (1) as a matter of policy, a settlement agreement could
not prospectively release intentional torts; and (2) the counterclaim was based in contract, but
plaintiff's amended petition made claims only in tort. We cannot affirm the summary judgment
on either ground.

 In reviewing a summary judgment, the question is whether the summary judgment
proof establishes as a matter of law that no genuine issue of material fact exists as to one or more
of the essential elements of the plaintiff's cause of action. Gibbs v. General Motors Corp., 450
S.W.2d 827, 828 (Tex. 1970). We use the following rules:



 1. The movant for summary judgment has the burden of showing there is no
genuine issue of material fact and that it is entitled to judgment as a matter of
law.


 2. In deciding whether or not there is a disputed material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as
true.


 3. Every reasonable inference must be indulged in favor of the non-movant and
any doubts resolved in their favor.



Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985).

 The summary judgment order states that defendants' fourth amended counterclaim
and the defenses asserted in defendants' fourth amended original answer are based entirely upon
the alleged effect of an earlier settlement agreement involving some of the parties in the instant
suit. Because plaintiff's current claim is based solely upon the intentional tort of misappropriation
of trade secrets, that earlier settlement agreement as a matter of law could not have released any
party from future intentional tortious conduct because releases that attempt to prospectively release
intentional, reckless, or grossly negligent actions are unenforceable and void in violation of public
policy. The judgment then goes on to say that the obligation to maintain the confidentiality of
trade secret and proprietary information is separate and distinct from any contractual relationship
relating to the trade secret and subjects the breaching party to tort liability for breach of its
confidential relationship. 

 Cedar Fiber relied on, and the summary judgment cites, Smith v. Golden Triangle
Raceway, 708 S.W.2d 574 (Tex. App. 1986, no writ), for the proposition that the settlement
agreement was void on public policy grounds. Golden Triangle Raceway involved a person,
injured while in the pit area of a racetrack, who had signed a release for all liability on the part
of the track, including for negligent acts. There are several problems with relying on this case
in the way in which Cedar Fiber did. First, the holding of the case is not that an attempt to
release liability for gross negligence or intentional or reckless acts is contrary to public policy. 
The actual holding is: "We hold a term in a release attempting to exempt one from liability or
damages occasioned by gross negligence is against public policy." Golden Triangle Raceway, 708
S.W.2d at 57 (emphasis added). The court had previously quoted a section from the restatement
of contracts that included the intentionally or recklessly language.

 Second, although in general, a party may not release itself from future grossly
negligent or intentional acts not all states agree with that view or have ruled on the issue. See
Comment, Releases: An Added Measure of Protection from Liability, 39 Baylor L. Rev. 487,
502-03 (1987). These cases do not appear to have occurred in the context of a "business tort" 
such as misappropriation of trade secrets, but in the personal injury, fraud, warranty, or deceptive
trade practice context. We do not believe that the policies are the same in all areas. Trade secret
law involves a balance between the factors favoring competition and free mobility of labor, and
those favoring investment and entrepreneurial conduct. See generally, Henry Perritt, Workplace
Torts § 9.1 (1991). (3) In this cause, in which the release was a function of a settlement of a lawsuit
arising out of the sale of a business, and was between two parties with apparently equal bargaining
power, we cannot find that public policy would, as a matter of law, prohibit the release.

 The other ground on which the court granted summary judgment was that, after
amendments, the claim that Cedar Fiber brought was in tort and the counterclaim that the Murrs
brought was in contract. Although it is true that a duty not to disclose trade secrets exists at
common law and need not be a matter of contract, tort and contract claims involving trade secrets
are commonly brought together. See Perritt, supra. Both claims arose out of the same set of
transactions -- the employment/ownership relationship between the Murrs and Cedar Fiber, the
sale to Kimble Industries, and the settlement agreement from other litigation arising out of that
sale. The counterclaim appears to be compulsory. Tex. R. Civ. P. Ann. 97(a) (1979); Wyatt v.
Shaw Plumbing Co., 760 S.W.2d 245 (Tex. 1988).

 Wyatt sets out six factors to consider to decide whether a counterclaim is
compulsory:


 (1) it is within the jurisdiction of the court; (2) it is not at the time of filing the
answer the subject of a pending action; (3) the action is mature and owned by the
pleader at the time of filing the answer; (4) it arises out of the transaction or
occurrence that is the subject matter of the opposing party's claim; (5) it is against
an opposing party in the same capacity; and (6) it does not require for adjudication
the presence of third parties over whom the court cannot acquire jurisdiction.


Id. at 247. Under Tex. R. Civ. P. Ann. 97(g) (1979), tort cannot be a set-off or counterclaim
against a contractual demand, or vice-versa, unless they arise out of or are incident to each other. 
These two claims arose out of the same set of facts. Therefore, the counterclaim was properly
brought even after the pleadings were amended. We sustain the Murrs cross-point of error one
that summary judgment was improperly granted on these two bases and remand that part of the
cause.



DAMAGES FOR DELAY



 The Murrs, in cross-point of error two, contend that Cedar Fiber appealed for
purposes of delay and without sufficient cause and therefore the Murrs should receive damages
in an amount not to exceed ten times the total taxable costs. 

 If the appellate court determines that a litigant has appealed "for delay and without
sufficient cause, then the court may, as part of its judgment, award each prevailing appellee an
amount . . . not to exceed ten times the total taxable costs as damages against such appellant." 
Tex. R. App. P. Ann. (Supp. 1991). The Murrs base this claim on their contention that Cedar
Fiber failed to preserve error and so had no reasonable basis to believe the judgment would be
reversed, citing Ferrer v. Corsicana Transmission, Inc., 807 S.W.2d 653 (Tex. App. 1991, no
writ), and that Cedar Fiber misstated facts and misconstrued the record before the appellate court,
citing Triland Investment Group v. Tiseo Paving Co., 748 S.W.2d 282 (Tex. App. 1988, no writ).

 We first point out that the Murrs took an independent appeal from the adverse
summary judgment -- an appeal which would have allowed Cedar Fiber to bring cross-points in
the same way that the Murrs did in this suit. We conclude that sanctions for a frivolous appeal
should not be imposed. We overrule cross-point of error two.

 We affirm the trial court's judgment with regard to Cedar Fiber's claim. We
reverse the summary judgment on the counterclaim and remand that portion of the cause for
further proceedings.



[Before Chief Justice Carroll, Justices Aboussie and Kidd; Justice Kidd Not Participating]

Affirmed in Part; Reversed and Remanded in Part

Filed:  November 20, 1991

[Do Not Publish]
1. [1] The jury did not answer question three. No objection was made in the charge conference
to the conditioning of question three on question one.
2. [2]  The sale of the plant in April 1984 is the relevant date. Cedar Fiber contends that the trade
secrets in question were learned before the sale. There is no contention that the secrets were
learned through industrial espionage, etc.
3. [3] There is some authority for the proposition that a contract may extinguish common law
duties regarding trade secrets. Michels v. Dyna-Kote Industries, Inc., 497 N.E.2d 586, 589
(1991) (Ind. Ct. App. 1986) ("except contract law" phrase in Ind. Code § 24-2-1(c) permits
contractual specification of post-employment duties respecting customer list to supplant common
law duties).